UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAPITAL ONE AUTO FINANCE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09-cv-4731 |
| | ) |
| ORLAND MOTORS, INC., f/k/a Luxury | ) Judge Ruben Castillo |
| Motors of Orland Park, Inc., d/b/a Orland | ) |
| Park Mitsubishi, and | ) |
| DOWNERS MOTORS, INC., f/k/a Luxury | ) |
| Motors, Inc., d/b/a Bentley Downers Grove, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINON AND ORDER

Capital One Auto Finance, Inc.[1] ("Capital One") brought this diversity action against Orland Motors, Inc., f/k/a Luxury Motors of Orland Park, Inc., d/b/a Orland Park Mitsubishi ("Orland") and Downers Motors, Inc., f/k/a Luxury Motors, Inc., d/b/a Bentley Downers Grove ("Downers") (collectively, "Defendants") for breach of contract, unjust enrichment, contractual indemnification, negligence, specific performance, fraud, suppression, and misrepresentation.[2] (R. 55, First Am. Compl.; R. 77, Sec. Am. Compl.) Following the entry of a default judgment against Defendants, (R. 173, Min. Entry), Capital One filed a motion for entry of final judgment,

---

[1] Effective April 1, 2011, Capital One was merged into another entity, Capital One, N.A., and is now known as Capital One Auto Finance, a Division of Capital One, N.A. (R. 174, Pl.'s Mot. Final J. at 1.)

[2] Luxury Motors O'Hare, Inc. a/k/a Luxury Motors O'Hare LLC, n/k/a New Luxury Motors II, LLC ("Luxury") and Great Western Motors, Inc. d/b/a Hyundai of North Aurora ("Great Western") were also named defendants in Capital One's original and first amended complaints, but were dismissed from the lawsuit on January 26, 2010, and July 14, 2011, respectively. (R. 62, Min. Entry; R. 171, Min. Entry.)

1

punitive damages, and attorneys' fees ("Motion for Final Judgment") against Defendants in the total amount of $3,179,340.59. (R. 174, Pl.'s Mot. Final J.) For the reasons discussed below, the Court awards Capital One $614,179.08 in compensatory damages, but denies its request for punitive damages. In addition the Court awards Capital One $9,840 in attorneys' fees and $98,605.19 in prejudgment interest for a total judgment of $722,624.27 against Defendants.

## RELEVANT FACTS[3]

Defendants are automobile dealerships located in the State of Illinois. (R. 77, Sec. Am. Compl. ¶ 7.) Capital One is a corporation with its principal place of business in Texas. (*Id.* ¶ 1.) In February 2002 and April 2005, Capital One entered into Dealer Agreements with Orland and Downers, respectively, whereby Defendants agreed to arrange for financing for the purchase of new and/or used motor vehicles by Defendants' customers. (*Id.* ¶ 10; R. 77-2, Ex. A, Dealer Agreements at 2, 8.) As part of the Dealer Agreements, Capital One agreed to purchase from Defendants certain contracts, promissory notes, security agreements, and other documents ("Receivables") acquired by Defendants from their customers as part of the financing for the purchase of the vehicles. (R. 77, Sec. Am. Compl. ¶ 10; R. 77-2, Ex. A, Dealer Agreements at 2, 8.) In the event that Defendants sold vehicles to individuals who were not bona fide debtors, Defendants had an obligation to repurchase those Receivables from Capital One. (R. 77-2, Ex. A, Dealer Agreements ¶ 3.)

Defendants allowed individuals who were not bona fide debtors, or did not have full or legal capacity to execute contracts, to enter into contracts to purchase and finance vehicles.

---

[3] Because the Court found Defendants to be in default, the factual allegations in the second amended complaint relating to liability are taken as true. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

(R.77, Sec. Am. Compl. ¶ 12.) Specifically, Capital One identified twenty-two instances in which the contracts contained either falsified employment information or information that was wholly the result of identity theft. (*Id.* ¶ 52(a)-(v).) As a result, Defendants sold Capital One invalid or inaccurate Receivables. (*Id.* ¶ 12.) Considering the number of contracts containing false information, Capital One alleged that Defendants knew their customers were providing false information, but nonetheless chose to facilitate the financing of the vehicles through Capital One. (*Id.* ¶14.)

On August 25, 2008, Capital One wrote a letter to Defendants notifying them of their duty to repurchase the Receivables and demanding payment. (*Id.* ¶ 16; R. 77-3, Ex. B, Notice and Demand to Repurchase.) Despite Defendants' contractual obligation to repurchase the Receivables from Capital One, Defendants refused to do so. (R. 77, Sec. Am. Compl. ¶ 17.)

## PROCEDURAL HISTORY

Capital One commenced this action against Defendants on August 4, 2009, and on December 9, 2009, Capital One filed an amended complaint. (R. 1, Compl.; R. 55, Am. Compl.) Defendants filed an answer and an amended answer to the original complaint on October 16, 2009, and December 3, 2009, respectively, (R. 34, Answer; R. 52, Am. Answer), as well as an answer to the first amended complaint on December 16, 2009. (R. 56, Answer Sec. Am. Compl.)

On April 15, 2010, Defendants ceased participating in the discovery process and began a pattern of silence. (R. 174, Pl.'s Mot. Final J. at 2.) Approximately three months later, on July 1, 2010, Capital One filed a second amended complaint and included a new count alleging "Fraud, Suppression, and Misrepresentation." (R. 77, Sec. Am. Compl. ¶¶ 45-52.) Defendants never answered. Their silence continued on July 29, 2010, when counsel for Defendants failed to

appear at a status conference. (R. 86, Min. Entry.) That same day, the Court found Defendants to be in default, but indicated its willingness to vacate the default in the event they complied with all outstanding discovery requests and filed an answer to the second amended complaint by August 13, 2010. (*Id.*) Defendants failed to meet this deadline.

On September 21, 2010, Defendants moved to vacate the default judgment entered on July 29, 2010. (R. 96, Defs.' Mot. Vacate.) Shortly thereafter, on September 28, 2010, Defendants requested to withdraw their motion to vacate the default judgment and the Court granted their oral request. (R. 101, Min. Entry.)

On July 11, 2011, Capital One moved the Court to enter a default judgment as to Defendants. (R. 168, Pl.'s Mot. Default J.) At a status hearing held on July 14, 2011, Defendants were given until August 2, 2011, to respond to Capital One's motion for entry of a default judgment. (R. 171, Min. Entry.) They failed to respond. On August 11, 2011, after Defendants failed to appear at a status hearing on Capital One's motion for entry of a default judgment, the Court granted Capital One's motion. (R. 173, Min. Entry.) Judgment was entered against Defendants in the amount of $614,179.08 in compensatory damages, plus interest and an award of punitive damages and attorneys' fees. (*Id.*) The Court granted Capital One leave to file a motion for punitive damages and attorneys' fees, and allowed Defendants seven days to respond. (*Id.*) Capital One filed its Motion for Final Judgment on November 10, 2011. (R. 174, Pl.'s Mot. Final J.) In its Motion for Final Judgment, Capital One seeks: (1) an award of punitive damages in the amount of four times compensatory damages, which amounts to $2,456,716.32; (2) an award of attorneys' fees in the amount of $9,840; and (3) a final judgment reflecting these amounts, plus the previously-determined amount of $614,179.08 in compensatory damages and

prejudgment interest of $98,605.19, for a total final judgment in the amount of $3,179,340.59. (*Id.* at 1.)

## ANALYSIS

**I.      Whether Capital One is entitled to attorneys' fees**

Capital One asserts that it is entitled to $9,840 in attorneys' fees as a result of Defendants' breach of the Dealer Agreements. (R. 174, Pl.'s Mot. Final J. at 6-8.) Generally, federal courts sitting in diversity apply state substantive law and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The issue of whether Capital One is entitled to attorneys' fees as damages under a breach of contract claim is a substantive law issue. *Fednav Intern. Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838-39 (7th Cir. 2010). Accordingly, the Court looks to Illinois law to evaluate Capital One's common law breach of contract claim and the availability of such damages. *Id.* at 839 ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.") (quoting *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008)).

Illinois recognizes the American Rule that "absent a statute or contractual provision, a successful litigant must bear the burden of his or her own attorney's fees." *Fednav Intern. Ltd.*, 624 F.3d at 839 (quotation marks omitted) (quoting *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1006 (7th Cir. 1989)); *see also Baksinski v. Nw. Univ.*, 595 N.E.2d 1106, 1109 (Ill. App. Ct. 1st Dist. 1992). Capital One argues it is entitled to attorneys' fees pursuant to section 4 of the Dealer Agreements. (R. 174, Pl.'s Mot. Final J. at 6.) Section 4 of the Dealer Agreements provides:

5

> Dealer hereby agrees to defend, indemnify, and hold harmless C.O.A.F. from and against any and all costs, expenses, losses, damages, claims, and liabilities, . . . for any breach of any of the Dealer's representations, warranties and covenants contained in this Agreement. As further explanation of, and not in limitation thereof, costs, expenses, losses, damages, claims and liabilities shall be deemed to include . . . Attorneys' fees, court costs of investigation and related costs.

(R. 77-2, Ex. A, Dealer Agreements ¶ 4.) This contractual provision clearly governs Capital One's claim for attorneys' fees against Defendants.

Section 4 of the Dealer Agreements provides that Defendants are responsible for "any and all costs . . . for any breach of any of the [Defendants'] representations . . . [including] Attorney's fees." (*Id.*) Pursuant to the terms of the Dealer Agreements, Defendants represented to Capital One that "[a]ll contracts are genuine, [and] signed by persons with full capacity to contract . . . ." (*Id.* ¶ 1(g)), and that the "Debtors named in the Receivables are bona fide Debtors and each Debtor . . . had legal capacity to make such contracts . . . ." (*Id.* ¶ 1(k).) Additionally, the Dealer Agreements provide that "[a]t any time prior to the scheduled maturity of any receivable, and upon notice and demand from C.O.A.F., the [Defendants] hereby agree[] to repurchase from C.O.A.F. any Receivable for which there has been a breach of one or more of the Dealer's representations and warranties." (*Id.* ¶ 3.) By allowing individuals to enter into contracts who did not have the capacity to do so or who were not bona fide debots, (R. 77, Sec. Am. Compl. ¶ 12) and refusing to repurchase the Receivables after Capital One demanded they do so, (*Id.* ¶ 17), Defendants breached some of the representations they made to Capital One in the Dealer Agreements. As a result of these breaches, and based on the express terms of the Dealer Agreements, Capital One is entitled to recover its attorneys' fees from Defendants.

Although Illinois law governs whether a court should award attorneys' fees pursuant to an indemnity provision in a contract, the method of determining attorneys' fees is a procedural issue governed by federal law in a diversity suit. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004) ("[I]n a diversity suit the requirements of proof are governed by federal rather than state law."); *Oldenburg Grp., Inc. v. Frontier-Kemper Constructors, Inc.*, 597 F. Supp. 2d 842, 847 (E.D. Wis. 2009). Here, Capital One requests attorneys' fees pursuant to the "lodestar" method. (R. 174, Pl.'s Mot. Final J. at 6.) The "lodestar" figure represents "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," and is generally the starting point for calculating reasonable attorneys' fees in a statutory fee-shifting case. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (reviewing award of attorneys' fee award under 42 U.S.C. § 1988); *see also McNabola v. Chi. Transit Auth.*, 10 F. 3d 501, 518 (7th Cir. 1993) (same); *Medcom Holding Co. v. Baxter Travenol Labs.*, 200 F.3d 518, 520 (7th Cir. 2000) [hereinafter *Medcom*] (noting that "[i]temization is required under fee-shifting statutes, at least when the judge employs the 'lodestar' method").

In a contractual fee-shifting case, as opposed to a statutory fee-shifting case, however, the nature and scope of a court's determination as to whether attorneys' fees are reasonable is more limited. *Medcom*, 200 F.3d at 521 (vacating and remanding award of attorneys' fees pursuant to indemnity agreement in diversity suit governed by Illinois law where district court engaged in "detailed, hour-by-hour- review after the fashion of a fee-shifting statute" rather than reviewing party's costs to ensure they were commercially reasonable); *see also Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2009 WL 4556121, at *4 (E.D. Wis. Nov. 27, 2009), *aff'd*, 619 F.3d 748 (7th Cir. 2010) ("*Medcom* and its progeny hold that, as a matter of the

7

efficient and fair administration of the federal courts, individual scrutiny of line-item entries is neither necessary nor appropriate in contractual fee-shifting cases."), *cert. denied*, 131 S.Ct. 1784 (2011). In *Medcom*, the Seventh Circuit instructed that rather than engage in a detailed, "hour-by-hour" review, a court should determine whether the requested attorneys' fees were commercially reasonable. 200 F.3d at 521. Commercial reasonableness, in turn, is assessed by looking to market mechanisms. *Id.* at 520-21 (citing *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) [hereinafter *Balcor*]). *Medcom* directs courts to review a prevailing party's "aggregate costs to ensure that they [are] reasonable in relation to the stakes of the case and [the losing party's] litigation strategy[.]" *Id.* at 521. One indicator of reasonableness, and indeed "the best evidence of the market value of legal services is what people pay for it." *Balcor*, 73 F.3d at 153. Other indicators of reasonableness include: (1) whether a litigant paid for the bills "at a time when its ultimate recovery was uncertain"; (2) whether the aggregate amount of legal fees and expenses is comparable to or less than the opponent's total legal fees and expenses, *Medcom*, 200 F.3d at 521; and (3) where a "[c]orporate inside counsel monitor[s] bills submitted by outside counsel[,]" and the bills are paid, reasonableness may be inferred. *Balcor*, 73 F.3d at 153. Overall, the Court must keep in mind that it has a responsibility to guard against moral hazard, which is "the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Medcom*, 200 F.3d at 521.

Applying the commercial reasonableness standard to Capital One's request for attorneys' fees, the Court finds that the request of $9,840 is reasonable. Here, Capital One's attorney, John Kallman, a commercial litigation attorney with forty years of experience, submitted an affidavit attesting that his hourly rate of $205 per hour is "at or below the prevailing rate for a lawyer"

with comparable experience. (R. 174, Pl.'s Mot. Final J., Decl. John Kallman, ¶ 3.) In addition to his affidavit, Kallman also submitted his "fee invoices" consisting of his hourly billing entries which contain detailed narratives explaining the tasks he performed for the matter. (*Id.*, Ex. 1.) While it is unclear whether Capital One actually paid these invoices, the Court notes that the litigation has spanned the course of approximately three years. During this time, Kallman spent a total of forty-eight hours on the matter, as it related to Defendants,[4] for an average of sixteen hours each year. The expenditure of this amount of time does not strike the Court as an effort by Kallman to run up costs. Furthermore, the amount requested, $9,840, represents approximately 1.6% of the total amount of compensatory damages previously awarded, and therefore the Court finds that the amount of attorneys' fees requested are reasonable in relation to the stakes of the case. *See Oldenburg Grp. Inc.*, 597 F. Supp. 2d at 848 (awarding more than $300,000 in attorneys' fees where there was a $10,000,000 claim at stake); *Logan Knitting Mills, Inc. v. Matrix Grp. Ltd., Inc.*, No. 04-C-7596, 2007 WL 1594482, at *3 (N.D. Ill. June 1, 2007) (awarding over $260,000 in attorneys' fees to prevailing party where suit was worth $360,000 and jury awarded prevailing party $90,000). Because the Court finds that Capital One's request is commercially reasonable, the Court awards attorneys' fees to Capital One in the amount of $9,840.

## II. Whether Capital One is entitled to punitive damages

Capital One next requests that punitive damages be assessed against Defendants in the amount of $2,456,716.32, or four times compensatory damages. (R. 174, Pl.'s Mot. Final J. at

---

[4] Capital One excluded from its request for attorneys' fees any work relating to its claims against Great Western and Luxury. (R. 174, Pl.'s Mot. Final J. at 7.)

1.) "As a federal court sitting in diversity, we look to the law of Illinois to determine the appropriateness of punitive damages." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 946 (7th Cir. 2002) (citing *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1276 (7th Cir. 1993)). In general, the Illinois Supreme Court does not favor punitive damages. *E.g.*, *Slovinski v. Elliot*, 927 N.E.2d 1221, 1225 (Ill. 2010). Nonetheless, punitive damages may be awarded where a "defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is 'committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.'" *Id.* (quoting *Kelsay v. Motorola Inc.*, 384 N.E.2d 353, 359 (Ill. 1978)). In a fraud action, punitive damages are recoverable "'where the false representations are wantonly and designedly made.'" *Home Sav. and Loan Assoc. of Joliet v. Schneider*, 483 N.E.2d 1225, 1228 (Ill. 1985) (quoting *Laughlin v. Hopkinson*, 126 N.E. 591, 595 (Ill. 1920)). "While deceit alone cannot support a punitive damage award, such damages may be allowed 'where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness." *Schneider*, 483 N.E.2d at 1228; *see also Europlast, Ltd.*, 10 F.3d at 1276 (noting that Illinois courts "insist that plaintiffs must establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness") (quotation marks and citation omitted).

"Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." *Kelsay*, 384 N.E.2d at 359. Because the purpose of a punitive damages award is

punishment and deterrence, they may only be awarded for "conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others.'" *Loitz v. Remington Arms Co., Inc.*, 563 N.E.2d 397, 415-16 (Ill. 1990) (quoting Restatement (Second) of Torts § 908, comment *b*, at 464-65 (1979)). Due to their penal nature, the Illinois Supreme Court has also instructed courts that they "must be cautious in seeing that [punitive damages] are not improperly or unwisely awarded." *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir.1996) (quoting *Deal v. Byford*, 537 N.E.2d 267, 272 (Ill. 1989)).

Here, Capital One seeks punitive damages pursuant to Count VI of its second amended complaint, alleging fraud, suppression, and misrepresentation, (R. 174, Pl.'s Mot. Final J. at 4), and which the Court construes as a fraudulent misrepresentation claim. (R.77, Sec. Am. Compl., ¶ 12.) While this tort can support an award of punitive damages under Illinois law, *Carter v. Mueller*, 457 N.E.2d 1335, 1342 (Ill. App. Ct. 1st Dist. 1983), "in order to recover punitive damages, [a] plaintiff . . . must show that the misconduct is above and beyond that which is the basis of the action." *Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1362 (Ill. App. Ct. 2d Dist. 1993) (citations omitted). In its second amended complaint, Capital One alleged that Defendants allowed individuals who were not bona fide debtors, or who did not have full or legal capacity to execute contracts, to enter into contracts for the purchase and financing of motor vehicles, and that Defendants then sold to Capital One "non-genuine, invalid, and/or inaccurate Receivables, and provided inaccurate descriptions and information to [Capital One] in connection with the sale of the Receivables." (R.77, Sec. Am. Compl. ¶ 12.) According to

11

Capital One, in light of the number of loans involved, Defendants knew their customers were providing false information. (*Id.* ¶ 14.) Capital One further alleged that Defendants sold Receivables to Capital One when they knew that the warranties they made under the Receivables were false, that Capital One reasonably relied on the false representations, that the false warranties were made "with the intention of inducing Capital One into purchasing the Receivables[,]" and that Capital One was damaged as a result of its reliance. (*Id.* ¶¶ 46-48.) On the basis of these allegations, Capital One adequately pleads the elements of the tort of fraudulent misrepresentation.[5] Nevertheless, these allegations do not demonstrate that Defendants' conduct involved outrageous conduct above and beyond the conduct required to establish this tort.

Capital One contends that "[t]he scale of the fraud alone is sufficiently reprehensible to warrant an award of punitive damages[,]" (R. 174, Pl.'s Mot. Final J. at 6), but fails to point the Court to any case law in support of its bare assertion. While the scale of the fraud and continuing pattern of deceit is indeed reprehensible, the Court finds that the facts as alleged in the second amended complaint do not reach such proportions as to justify an award of punitive damages. *See Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (vacating award of punitive damages based on default judgment in diversity suit applying Illinois law where the defendants' conduct demonstrated a continuing pattern of deceit). The second amended complaint lacks factual allegations demonstrating that Defendants' conduct involved more than simple deceit or that it was malicious and willful. *Cf. Schneider*, 483 N.E.2d at 1228 (where the

---

[5] To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008).

plaintiff presented "evidence of several other similarly fraudulent transactions involving defendants," plus additional evidence including "misleading tax statements, and the fact that defendants actively discouraged plaintiffs from engaging counsel to look over the contract," court found there was "sufficient evidence for the jury to find that the false representations were willfully and wantonly made").

Furthermore, the imposition of punitive damages based on a default judgment appears to be an exception, rather than a rule within the Seventh Circuit. *See Merrill Lynch Mortg. Corp.*, 908 F.2d at 253 (vacating award of punitive damages based on default judgment in diversity suit applying Illinois law); *Blumenthal v. Anselmo*, No. 07-C-7230, 2009 WL 1940760, at *3 (N.D. Ill. July 3, 2009) (declining to award punitive damages based on default judgment in diversity action involving Illinois law where the defendant induced the plaintiff into making a contract by making false misrepresentations to plaintiff); *Dvore v. Casmay*, No. 06-CV-3076, 2009 WL 211856, at *6 (N.D. Ill. Jan. 29, 2009) (punitive damages based on default judgment were inappropriate where the defendant was found liable for "large sum" of $200,000 in ordinary negligence action brought under Illinois law); *Kopinsky v. Your Referral Serv., Inc.*, No. 94-C-4351, 1995 WL 121533, at *4 (N.D. Ill. Mar. 17, 1995) (declining to award punitive damages based on default judgment in diversity action applying Illinois law because although evidence supported simple fraud, it revealed "little, if any, evidence of 'gross fraud' or outrageous conduct,' and 'deceit alone cannot support a punitive damage award") (quoting *Europlast, Ltd.*, 10 F.3d at 1276). For these reasons, the Court denies Capital One's request for punitive damages.

### III. Whether Capital One is entitled to prejudgment interest

In addition to attorneys' fees and punitive damages, Capital One also requests prejudgment interest in the amount of $98,605.19 to be included in the entry of the final judgment. (R. 174, Pl.'s Mot. Final J. at 1.) Federal courts sitting in diversity "look to state law to determine the availability of (and rules for computing) prejudgment interest." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1405 (7th Cir. 1997). Absent an express agreement between the parties, Illinois law permits the recovery of prejudgment interest pursuant to statute "if the amount due is a fixed amount or easily computed." *Bank of Chi. v. Park Nat. Bank*, 640 N.E.2d 1288, 1296 (Ill. App. Ct. 1st Dist. 1994) (citations omitted). Under the Illinois Interest Act, a plaintiff may receive prejudgment interest at a rate of five percent per year where a defendant has used money rightfully belonging to the plaintiff during that time. 815 Ill. Comp. Stat. 205/2. Additionally, "[f]or interest to attach, prior to judgment, absent an agreement, the amount must be fixed, or determinable, and due, in the sense, that a debtor-creditor relationship has come into being." *Kansas Quality Const., Inc. v. Chiasson*, 250 N.E.2d 785, 789 (Ill. App. Ct. 4th Dist. 1969). In other words, there must be an easily determinable moment at which the interest rate attaches for the purposes of calculating a prejudgment interest award.

Capital One requests that the five percent rate be applied to the previously determined compensatory amount of $614,605.19, and that the application of this rate begin on August 25, 2008—the date of Capital One's repurchase demand. (R. 174, Pl.'s Mot. Final J. at 8.) Capital One requests that this application be carried through November 10, 2011, the date on which Capital One filed its Motion for Final Judgment. (*Id.*) Specifically, Capital One requests that the Court apply the five percent rate to the compensatory amount over a period of exactly three years

and 77 days, yielding a prejudgment interest amount of precisely $98,605.19. This time frame is easily determinable, and therefore the amount is sufficiently "fixed." Accordingly, the Court grants Capital One's request for prejudgment interest in the amount of $98,605.19.

## CONCLUSION

For the foregoing reasons, the Court awards Capital One $614,179.08 in compensatory damages, $9,840 in attorneys' fees, and $98,605.19 in prejudgment interest, for a total and final judgment of $722,624.27 against Defendants.

ENTERED:

Ruben Castillo
United States District Judge

Date: August 27, 2012

8/27/12